We have three argued cases this morning. The first is number 21-18-19, Schlusser v. United States, Mr. Enge.  Good morning, Your Honors. May it please the Court. When a Reserve Component Service member elects not to provide his spouse survivor benefits under Section 1448, he gambles with her future. That is what happened here, and it happened without notice or participation from Ms. Schlusser. For two reasons, we asked this Court to award Ms. Schlusser the survivor benefits she earned. Our position is not contrary to the plain language of Section 1448, because Mr. Schlusser elected to provide an annuity at less than the maximum level. Second, the development of the law supports the plain reading that requires spousal participation in this retirement decision. Turning to the first point, Mr. Schlusser failed to return his 20-year letter. That, in and of itself, was an election under Section 1448 to provide an annuity at less than the maximum level. Zero percent is included in that annuity. So your argument is that the 2000 legislation applies here, right? No, Your Honor. Our argument is that under the plain language of the 1985 amendment, which applied to Mr. Schlusser in 1995 when he received his 20-year letter, encompassed this particular situation. Did you make that argument to either the Board or the Claims Court? I thought you were arguing something else, really asking for more compassion, exception, or saying that relying on some, that it would be some form of injustice rather than a legal error under the statute. That's correct, Your Honor. At both the Board and at the lower tribunal, we did argue on equitable grounds, specifically under the Board's legal authority under Section 1552 to correct an error or injustice. Can we conclude that the Board committed a reversible error in its analysis of Mrs. Schlusser's arguments based on an argument that the Board never saw? Your Honor, it's absolutely in the discretion of this Court to take up and decide an argument for the first time on appeal. I recognize that precedent in this Court and others typically advises against such an approach, but it's absolutely within the discretion of this Court. And there are a few factors that militate towards that decision. There are no issues of fact to be decided here. We're just asking for an interpretation of Section 1448 more specifically to apply the plain language of the statute to Mr. Schlusser's election. But you have a problem with the plain language of the 1985 version because it says a married person who elects to provide, and then it goes on to talk about these notice requirements or concurrence requirements. If it wasn't someone who elected to provide an annuity, that's the difficulty with applying the 1985 statute here. That's correct, Your Honors. But he did make an election not to provide an annuity. He elected to provide an annuity at zero percent, at less than the maximum level. And that election was binding at least for the next 19 years until he passed or until he would have had the opportunity to send back another letter at age 60. So he did make an election. It was to provide an annuity at zero percent. Okay, but what about the open season provisions in 1998 and 2004, I think it was? The 1998 open season provision is specific that it doesn't require concurrence of the spouse in election to participate or not to participate in the survival benefit plan is not subject to the concurrence of a spouse or former employee of the spouse. And yet when we get to the 2004 version, that language is absent. And apparently there was an argument before the claims court, as I understand it, that under these open season provisions, particularly the 2004 open season provision, that concurrence for an election not to provide an annuity was required. We don't have the record of what transpired before the claims court in this respect, but was that argument made about the open season provision? To my understanding, Your Honor, to the extent that the open season provision was discussed in the lower tribunal, it's that it was centered around Mr. Schuessler's knowledge of the open seasons, not spousal concurrence or notification as to those open seasons. And Mr. Schuessler's intent is relevant only to the fact that it develops this case. We don't know what his intent was, and we can't presume what it was. We don't even know, as was discussed below, whether or not he knew of these open seasons. Just so I understand, your argument today on appeal is strictly a statutory argument on what is the best understanding of Section 1448 as it existed in 1995? Correct, Your Honor. And our argument is that Section 1448, as it was at that time, includes this particular situation. I mean, what's the interplay, if any? I know that he did provide, Mr. Schuessler did provide for insurance. Is that correct? Yes, Your Honor. How does that work? Was that a one-time payment, or is it a periodic annuity payment? Your Honor, the Service Members Group Wipe Insurance is a policy that service members elect annually. And to Ms. Schuessler, she was awarded $400,000, but it is a monthly payment, and it terminates eventually. So you can have, if he had signed up for it, you could have both the Survivor Benefit Plan payment and the monthly insurance payment that you're talking about. Absolutely, Your Honor. The monthly insurance payments under the STLI is for when a service member dies while serving, as Mr. Schuessler did. And the Survivor Benefits are for post-retirement. Turning to the second point, that the development of the laws support the plain reading to include spousal concurrence in this particular situation, every version of the law has required greater spousal protection and participation, dating back to 1972, when it was just noticed, and to the present day, when you cannot make any type of election without concurrence. And Barbara and Kelly, Kelly, this Court's decision, emphasized the importance of spousal participation. This Court specifically said that it was Congress's intent not to allow a spouse to find out for the first time upon their service member's death that they were not entitled to these benefits. And Ms. Schuessler was denied participation in a binding retirement decision. I recognize that there is different language between the provision relating to the vested retirees from the reserves, those who have made age 60, and also to active duty soldiers, those who have hit 20 years, and to Mr. Schuessler, who was in a gray area. He had hit his 20 years in the service, but he was under 60. I recognize that there is a difference in language between those two provisions. We view that more as a gap in the language, a gap in the law, rather than an explicit inclusion of one provision of not to participate in the former provision and... How does the non-retroactivity provision factor into this? Because we, as you know, we have that language there that says certain amendments don't apply to people, to instances before 2000. Yes, Your Honor. And the non-retroactivity provision does not apply here. When we went to the board, we asked them to apply their equitable powers under Section 1552. They can use that power regardless of what that statute said. They could have corrected, or should have corrected, the error here, the injustice here with their equitable power. The board initially, I guess in its initial decision, took the position that he had not received the 20-year letter, right? Yes, Your Honor. And that was the basis for their ruling, and then that got sort of overturned when it was determined, in fact, that the letter had been received. Is that correct? I mean, it didn't seem to be any dispute now that the letter was received. Am I correct on that? That's correct, Your Honor. We know that the 20-year letter was within Mr. Schuessler's military records. We don't know. He could have received it, and we don't know what happened after that. We just know that a letter was not returned. Thank you. Just curious. Is there some advantage to a reservist who gets his or her 20-year letter and chooses to forego electing this annuity, spousal annuity, and then maybe waiting until the person turns 60, until the reservist turns 60, to perhaps make the election for a spousal annuity? I guess what I'm trying to figure out is, is there some kind of economic advantage? Maybe if you do choose not to elect a spousal annuity at the time of your 20-year letter, are you somehow afforded higher retirement payments down the road compared to if you had made the spousal annuity election at your 20-year letter? I'm just trying to understand what the motivations might have been in this case or any other case where someone chooses to forego electing a spousal annuity upon receiving a 20-year letter. Yes, Your Honor. There is a slight monetary advantage. When the servicemember makes the election or sends back that letter and elects an amount to give to the spouse, a certain amount is withdrawn from their reserve pay and from their reserve retirement pay to fund that annuity. In the short term, the servicemember would see a reduced payment to himself. In the long term, the spouse would be provided whatever percentage they agreed upon. And I would reiterate that we don't know Mr. Schuessler's motivation and his motivation in this particular case is not, is only relevant to the extent that it develops the case. What's at issue here is the participation by Ms. Schuessler in this binding decision. And I recognize that, as I was speaking to earlier, the difference in language between the provisions that deal with vested retirees and gray area members like Mr. Schuessler, who have not yet hit 60 but have hit their 20 years. Mr. Schuessler's election, just as those made by vested retirees, was binding. Yes, he had the opportunity to elect at age 60 again. Because he did not send back the letter, he made that election at less than the maximum. But it still was binding. Absent an open season, which again, we don't know if he knew about, or if he had considered them, we don't know anything about his intent regarding those open seasons or an act of Congress. The election then was binding on Ms. Schuessler. And Ms. Schuessler was denied any participation and was caught completely off guard in 2014 when she applied for these benefits. And you want to save time for Revolve? Yes, Your Honor. I'll save the remainder for Revolve. We'll give you two minutes. Mr. Angudlo. Good morning, Your Honors. And may it please the Court. This appeal presents a straightforward question of statutory interpretation. Ms. Schuessler contends that the Board erred in interpreting the spousal notification requirement of the Survivor Benefit Statute 10 U.S.C. 1448. But at the time that Mr. Schuessler deferred his SBP election, the statute plainly did not require spousal notice for a service member in his position. In fact, before the Board, in two separate letters, Ms. Schuessler had conceded this fact. So this is, we're talking here about the 1985 legislation, and your argument is based on the fact that the concurrence requirements only apply to someone who's elected to participate in the plan, right? Yes, Your Honor. And in fact, I'm sorry. But so, accepting that, if we look at the 1998 and 2004 legislation, the open season legislation, it perhaps is a bit different there. Because the 1998 legislation seems to characterize an election as both an election to participate and an election not to participate. And then, if you look at the 2004 legislation, if you assume that the 2004 legislation is using election in the same sense as it was in 1998, then there is an argument that there had to be spousal concurrence for the election not to participate. And I know that's not their argument. I'm just, at this point, asking whether that isn't a plausible reading of the 2004 legislation. Do you understand what I'm saying? Well, Your Honor, the amendment to the statute that I think opposing counsel is focusing on is the 2000 amendment. And in the 2000 amendment... Okay, I understand that. But I'm asking a different question. I'm asking about the 2004 open season legislation, which, if you define election under that legislation the same way it was defined in 1998, it would include an election not to participate. And if you accept that, the next step seems to be that there had to be spousal concurrence for that election not to participate. Mr. Schussler received his letter in 1995. Help me address what I'm saying about the possible interpretation of the 2004 open season legislation. Well, to the extent that the 2004 open season legislation required spousal notice, it didn't override the congressional intent in 2000 against retroactivity. And so there was no spousal notice in 1995, the time that Mr. Schussler received his 20-year letter. And to the extent that the open season was discussed in the trial court, it's the last footnote of the trial court's decision, the focus of the open season was on whether or not Mr. Schussler had the knowledge of that open season. So I don't believe the issue... I understand that, but you're really, it seems to me, not addressing the question I'm asking. And that is under the 2004 legislation, if the word election includes non-election or election not to participate, isn't there an argument that spousal concurrence was required for the election not to participate? There could be an argument. I don't believe Appellant has made that argument, but that would also cut against the presumption against retroactivity. I don't believe that statute would have allowed Mr. Schussler to enjoy the benefit of that amendment, given the presumption of retroactivity that's applied to statutes. And that, I think... But there's no non-retroactivity for the 2004 amendment, without applying to him, isn't there? It would have, Your Honor. Again, my understanding of the open season is that Mr. Schussler was aware of it and elected, and in effect, did not participate in the open season. And someone's participation in the SBP benefits is rooted in the decision that they make when they receive the 90-day letter. And in fact, Mr. Schussler received that letter in 1995. So I don't believe the open season can be read in the way that Your Honor suggests, to allow the retroactive application of the 2000 amendment. Specifically, in light of Congress's clear intent not to apply... In light of the 2000 amendment, I thought you agreed it does apply to Mr. Schussler, did apply to Mr. Schussler. Well, certainly, Mr. Schussler had the opportunity to enroll in the 2004 open season option, and he chose not to enroll. But I don't believe that would have... I mean, in effect, Your Honor, that would... That would, in effect, allow anybody to come before this court who clearly deferred their election during the period between 1985 and 2000, and use the 2000 open season period that Congress provided these service members to come back and say that they made an election under the statute.  Specifically, in regards to the 2000 amendment, which very clearly said that they would not apply the 2000 amendment retroactively to service members in Mr. Schussler's position. And I think beyond that, Your Honor, this argument wasn't presented by appellant. No, they didn't make... Apparently, they didn't make the argument either in the claims court or here. That's certainly correct, Your Honor. And the whole issue of spousal notice was never raised below. And in fact, opposing counsel and the board conceded that spousal notice was not required for someone in Mr. Schussler's position. So our first contention is that this argument has been waived. But even if we do consider the merits of their argument, turning to the plain text of the statute that was in effect in 1995, the time that Mr. Schussler received his 20-year letter, Mr. Schussler would have this court, in effect, read out the first six words or so of the statute, which read that a married person who elects to provide. Mr. Schussler made no election. Instead, he deferred his election to the time when he would turn 60. And in fact, what Mr. Schussler would have this court do is conflate subsection A and subsection B. Subsection A is the standard annuity provision, which reads that a married person who is eligible to provide, that's the standard annuity provision. Here, we have the reserve component annuity, which is a married person who elects to provide. There's clearly a difference between someone who is eligible for the program versus somebody who elects to participate in the program. And so we would ask this court to give effect to the difference between those different statutory terms. And then, of course, we look at the 2000 Amendment for greater clarification on the meaning of the statute. The 2000 Amendment does exactly what Ms. Schussler is asking this court to do, to extend eligibility to Mr. Schussler. But Congress explicitly made that change non-retroactive when they said that this only applies to 20-year letters starting January 1st, 2001. And so we would ask this court to defer to Congress's intent not to apply this change retroactively. The government recognizes that this may seem to be a harsh result for somebody in Ms. Schussler's position, and we sympathize with Ms. Schussler. But as Your Honor recognized during your colloquy with opposing counsel, there's a wide range of reasons that somebody in Mr. Schussler's position may elect to defer coverage to the age of... Oh, yeah, there's a reason that he might elect to defer, but it's a little difficult to understand why Congress in 1985 would not require a spousal concurrence for the non-election to participate. That, you know, at the same time requiring a spousal concurrence to elect less than the national benefit, it just doesn't seem to make a lot of sense. But there it is. So the subsection B, which involves a reserve component annuity, is when understood in the greater context that a reservist will have a second opportunity at the age of 60 to make that election. And when that former service member reaches the age of 60, whatever decision he or she makes would require spousal notice. Of course, that's no longer the case. Congress, as Your Honor has recognized, Congress has changed the statute, so spousal notice is required in any election, even a deferral. But to the extent that we can divine Congress's intent in 1985, when understood in the greater context that a service...a reservist has a second opportunity at age 60 to elect coverage, that explains the difference between subsection Big A, which is applicable to all those that are eligible for the program, and subsection Big B, which is applicable to those that elect to provide. And again, to the extent that this creates kind of a harsh or confusing result, Congress did address perhaps those concerns that Your Honor has in the 2000 Amendment. But again, in doing so, they explicitly made those changes non-retroactive. Ms. Schussler concedes on page 6 of her reply that had Mr. Schussler received this letter just six years later or five years later, he would have enjoyed the benefit of that Congressional Amendment. Unfortunately, he did not receive it at that time. He received it in 1995. And at the law, according to the law at the time, spousal notice was not required. This Court's hands, in effect, are tied by the statute. This case, Your Honors, begins and ends with the plain text of the statute, which is limited to former service members who elect to provide coverage. Mr. Schussler did not elect to provide coverage. He decided to defer his election to age 60. Tragically, he passed away before 60. But we ask this Court to respect the personal decision that Mr. Schussler made in accordance with the statute. And if there are no further questions, Your Honor, we would ask this Court to affirm the decision of the trial court below. Thank you very much, Your Honors. Thank you, Mr. Angiolini. Mr. Amner, you have two minutes. A few points on rebuttal, Your Honors. What I would first like to address is what the government characterizes as deferral is a binding election on Ms. Schussler for the next 20 years until Mr. Schussler had reached age 60. It was binding on Ms. Schussler. She needed to be able to participate in that initial election. And we are not asking this Court to retroactively apply the 2000 Amendment. We are asking the Court to apply the plain language of the 1985 Amendment as it applied at the time Mr. Schussler received his letter in 1995. The government also makes an assumption about Mr. Schussler's intent that he knew about the open enrollment seasons. I would like to reiterate that Mr. Schussler's intent is not relevant here. What is relevant here is Ms. Schussler's non-participation in this incredibly important decision. A decision that would affect her in the latest years of her life. She was denied participation in this crucial decision and she is still living with that today. Just so I understand, the amendments Congress made in 2000 to Section 1448B, those changes, in your view, did not have any consequential difference and impact on spousal annuities? No, Your Honor. They didn't. I recognize that they included that second... So they were just purely for clarification purposes? Yes, Your Honor. Okay. And to address the final issue of a potential floodgate, this is a very small window of applicable persons. We're looking at reservists from 1985 to 2000 who are in Mr. Schussler's shoes and who died before reaching age 60. And further, the government should be willing to adjudicate those problems before the ABCMR. That is the entire purpose of the Board, to handle large quantities of errors and injustices. Okay. Thank you, Mr. Henry. Thank you.